# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# at LEXINGTON

Civil Action No. 12-1-HRW

BETTY LAND,                                              PLAINTIFF,

v.          **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,          **DEFENDANT.**

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge

a final decision of the Defendant denying Plaintiff's application for supplemental

security income benefits.  The Court having reviewed the record in this case and

the dispositive motions filed by the parties, and being otherwise sufficiently

advised, for the reasons set forth herein, finds that the decision of the

Administrative Law Judge is supported by substantial evidence and should be

affirmed.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 8, 2009 Plaintiff protectively filed an  application for

supplemental security income benefits and disability insurance benefits (Tr. 151-

158). She alleged disability beginning on July 1, 2008, due to a back condition,

arthritis in lower back and hips and fibroids in lower back and stomach (Tr. 184).

This application was denied initially and on reconsideration. Upon request of Plaintiff, an administrative hearing was conducted by Administrative Law Judge Roger Reynolds (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Joyce Forest, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ found that Plaintiff was not disabled (Tr. 10-20).  Plaintiff was 51 years old at the time of the hearing decision.  She has a high school education and past work experience as a cashier, stocker, truck driver, factory packer and farm laborer.

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since  the alleged onset date of disability (Tr. 13).

The ALJ then determined, at Step 2, that Plaintiff suffers from chronic low back pain with degenerative disc disease of the lumbar spine and mild spondylolisthesis at L4 / L5, a history of uterine fibroids and bursitis in her right hip, which he found to be "severe" within the meaning of the Regulations (Tr. 13-14).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 14).  In doing so, the ALJ specifically considered listings 1.00, 1.02, 1.03, 1.04 and 1.06 (Tr. 14-17).

The ALJ further found that Plaintiff could not return to her past relevant work (Tr. 18) but determined that she  has the  residual functional capacity ("RFC") to perform  light and sedentary work with no climbing of ropes, ladders,

3

or scaffolds, occasional climbing of stairs or ramps, and no work with hands over the head (Tr. 17). The ALJ further found that Plaintiff required a sit-stand option with no prolonged standing or walking in excess of one hour without interruption, no operation of foot pedal controls, and no exposure to concentrated vibration or industrial hazards (Tr. 17). The ALJ further restricted Plaintiff to occasional bending, stooping, kneeling, crouching, or crawling (Tr. 17).

 The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 19).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner.

Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision.  Both parties have filed Motions for Summary Judgment [Docket Nos. 6 and 7] and this matter is ripe for decision.

### III.  ANALYSIS

#### A.   Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence.  "Substantial evidence" is defined as "such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion;" it is based on the record as a whole and must take into account

whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d

383, 387 (6ᵗʰ Cir. 1984).   If the Commissioner's decision is supported by

substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health

and Human Services*, 667 F.2d 524, 535 (6ᵗʰ Cir. 1981), *cert. denied*, 461 U.S. 957

(1983). "The court may not try the case *de novo* nor resolve conflicts in evidence,

nor decide questions of credibility." *Bradley v. Secretary of Health and Human

Services*, 862 F.2d 1224, 1228 (6ᵗʰ Cir. 1988).   Finally, this Court must defer to the

Commissioner's decision "even if there is substantial evidence in the record that

would have supported an opposite conclusion, so long as substantial evidence

supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273

(6th Cir.1997).

### B.    Plaintiff's Contentions on Appeal

Plaintiff contends that the ALJ's finding of no disability is erroneous

because: (1) the ALJ failed to discuss the weight he gave to the medical opinions

in the record, (2) the ALJ did not properly consider Plaintiff's obesity , (3) the ALJ

did not properly evaluate Plaintiff's credibility and (4) the hypothetical question

posed to the VE by the ALJ was incomplete   [Plaintiff's Memorandum in Support

of Summary Judgment, Docket No. 6, pg. 2] .

### C.    Analysis of Contentions on Appeal

Plaintiff's first claim of error is that the ALJ failed to discuss the weight he gave to the medical opinions in the record.

In order to be given controlling weight, the opinions of a treating source on issues involving the nature and severity of a claimant's impairments must be well supported by medically acceptable clinical and laboratory diagnostic techniques, and be consistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2).   Such opinions receive deference only if they are supported by sufficient medical data. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

Plaintiff's treating physician, Dr. William Davis, completed a residual functional capacity assessment in which he opined Plaintiff retained a maximum tolerance for sustained, reliable work activity for less than eight hours in a workday (Tr. 419).  He suggested that Plaintiff's mental symptoms rendered her unable to work (Tr. 416-42).  With regard to her physical capacity, he opined that Plaintiff could walk, stand, and sit less than one hour on a regular basis (Tr. 419). He stated that Plaintiff would need to lie down and rest on a regular basis and would frequently experience symptoms severe enough to interfere with her attention and concentration (Tr. 419). Additionally, he opined that Plaintiff could

occasionally carry up to ten pounds, but could rarely or never carry more than ten pounds (Tr. 419).

The ALJ found that this opinion, which suggests Plaintiff is basically confined to a bed, was not supported by the record. For instance, during the time encompassed by Dr. Davis' opinion, Plaintiff maintained part-time employment as a housekeeper and store clerk. This fact undermine's Dr. Davis' opinion of disability. Further, although Dr. Davis found Plaintiff's mental condition disabling, he did not refer her to a mental health professional. These factors detract from Dr. Davis' opinion and the ALJ found as much.

The ALJ considered the opinion of another treating physician, Dr. Harry Lockstadt. In his opinion, he concluded that Plaintiff could sit six hours, stand/walk two hours, could not climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs (Tr. 245). He further opined that Plaintiff could occasionally push/pull overhead using her arms (Tr. 245). Dr. Lockstadt opined that Plaintiff could perform both light and sedentary work (Tr. 245). Dr. Lockstadt also opined that Plaintiff could stand and walk for up to one-third of the workday and could grasp and manipulate up to two thirds of the workday (Tr. 245).

The ALJ clearly found a portion of Dr. Lockstadt's opinion credible. Dr. Lockstadt's opined that Plaintiff should never climb ladders (Tr. 245); the ALJ agreed with this particular restriction and incorporated it into Plaintiff's RFC (Tr. 17). Dr. Lockstadt limited Plaintiff to only occasional above shoulder work (Tr. 17); the ALJ restricted her to no work with the hands overhead (Tr. 17).

However, the ALJ did not incorporate all Dr. Lockstadt's opinion into the RFC. For example, the suggestion that Plaintiff could manipulate and grasp for two-thirds of the workday (Tr. 245). For example, in October 2008, Dr. Lockstadt reviewed Plaintiff's systems and described all her systems as "negative" (Tr. 260). In November 2008, Dr. Lockstadt described Plaintiff's extremities as negative for cyanosis, clubbing, or edema (Tr. 247). In November 2008, he opined that Plaintiff could perform regular work with no limitations at that time (Tr. 250). In November 2009, Dr. Lockstadt opined that Plaintiff could perform regular work "like she does at her own home" (Tr. 244). Although Plaintiff argues Dr. Lockstadt's November 2009 opinion does not support the ALJ's RFC finding because Plaintiff could work at her own pace at home, Pl.'s Br. at 6, this evidence supports the ALJ's decision not to adopt Dr. Lockstadt's more restrictive March 2009 findings, which he offered only a few months before and after his opinions that Plaintiff could perform regular work (Tr. 244, 245).

8

Furthermore, Dr. Lockstadt's treatment notes do not show that Plaintiff complained of problems with her hands, nor treatment by Dr. Lockstadt of symptoms related to hand pain (Tr. 244- 67). The record, including Dr. Lockstadt's previous opinions, supports the ALJ's decision to discount the limitations Dr. Lockstadt found on Plaintiff's ability to grasp and manipulate.

Substantial evidence further supports the ALJ's decision not to limit Plaintiff to walking only one-third of the workday, as Dr. Lockstadt opined (Tr. 245). For example, x-rays from October 2008 showed degenerative disc disease in Plaintiff's mid and lumbar spine with facet arthritis, but Dr. Lockstadt did not see indications for immediate surgery (Tr. 260-61). Dr. Lockstadt noted negative straight leg raising and recommended epidural steroid injections (Tr. 261). Later when Dr. Lockstadt reviewed a magnetic resonance image (MRI), he concluded that it showed a "relatively good looking back" and other than some minor degeneration and a small facet joint effusion, everything else "look[ed] pretty good." (Tr. 259). Dr. Davis' treatment notes show that Plaintiff participated in a "walking" program and lost weight (Tr. 372). In November 2009, Plaintiff reported that Lortab pain medication left her completely asymptomatic and allowed her to do her work and "bring home a paycheck." (Tr. 255). In August 2010, Dr. Davis found full range of motion in Plaintiff's lumbosacral and thoracic

9

spine, with some tenderness in the low back (Tr. 369). This evidence supports the

ALJ's decision not to adopt Dr. Lockstadt's walking limitations

As for Plaintiff's contention that ALJ did not discuss his evaluation of these opinions, it is without merit.  A review of the decision clearly establishes that the ALJ discussed these opinions in detail.  Although the ALJ did not quantify the exact weight he assigned the opinions, his decision shows that the ALJ discounted certain opinions and credited others, after considering them opinion in context of the entire record, as he was entitled to do in assessing RFC. See 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545, 416.913(b), 416.927, 416.945.

Plaintiff's second claim of error is that  the ALJ did not properly consider Plaintiff's obesity.

There is no diagnosis of obesity in the record, nor has any medical source, treating or otherwise, suggested functional limitation as a result of obesity. Therefore, the Court finds that the ALJ did not err in this regard.

Plaintiff's third claim of error is that the ALJ did not properly evaluate Plaintiff's credibility.

In evaluating a claimant's subjective complaints, the Commissioner considers objective medical evidence and information from the claimant and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures

12

taken to alleviate the claimant's pain. See 20 C.F.R. §§ 404.1529(c)(2), (3),

416.929(c)(2), (3).  In addition to the medical evidence as previously discussed,

the ALJ also found Plaintiff's work activity after her alleged onset date

undermined her allegations of disabling limitations (Tr. 17). See

20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I).  The ALJ noted that Plaintiff

worked part-time as a housekeeper and convenience store clerk (Tr. 13, 18, 37, 40,

203).  Furthermore, the record shows that Plaintiff drove and shopped after her

alleged onset date (Tr. Tr. 13, 18, 37, 40, 203).   The Sixth Circuit Court of

Appeals has stated that "[a]n ALJ may consider household and social activities

engaged in by the claimant in evaluating a claimant's assertions of pain or

ailments." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 532 (6th Cir.

1997).   The Court finds no error in the ALJ's assessment of Plaintiff's credibility.

Finally, Plaintiff claims error with regard to the hypothetical posed by the

ALJ to the VE and the answers given thereto.   This circuit's long-standing rule is

that the hypothetical question is proper where it accurately describes a claimant's

functional limitations. *Varley v. Secretary of Health and Human Services*, 820

F.2d 777, 779. (6th Cir. 1987).  This rule is necessarily tempered by the

requirement that the ALJ incorporate only those limitations which he or she finds

to be credible. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230,

1235 (6th Cir. 1993).

In this case, the hypothetical posed accurately portrays the RFC as

formulated based upon the objective medical evidence.  The record is devoid of

credible medical evidence suggesting functional limitations beyond those found by

the ALJ.   Given the objective medical evidence in the record, the hypothetical was  factually supported by the evidence of record and, thus, the response thereto constitutes substantial evidence in support of the ALJ's decision.

### III.  CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record.   Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**.  A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 22nd day of February, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge

Henry R. Wilhoit, Jr., Senior Judge

15